**ELLIS v HAZEL-ATLAS GLASS CO.**

Common Pleas Court, Muskingum Co.

No. 30639. Decided Dec. 27, 1940.

Leasure & Walters, Zanesville, for plaintiff.

Meyer, Johnson & Kincaid, Zanesville, for defendant.

### OPINION

By TANNEHILL, J.

This suit is an action on a contract made by two parties for the benefit of a third party. More particularly, it is an action brought by an employee, a member of a union, which union had been selected to be the sole bargaining agent of the employees of the factory, against the employer, by virtue of an agreement or labor contract between said union and the employer company.

Under the law of contract it is well established that the third party, for whose benefit a contract is made, can maintain an action for breach of the contract. It is also well established

that where the third party has certain duties or obligations to perform as a condition of the contract, said third party can not recover for the breach of contract where the third party fails to perform conditions of the contract on third party's part to be performed.

However, in this case certain other elements enter. This is not entirely a suit on contract brought by a third party.

In the instant case the plaintiff, Esta Bond Ellis, is seeking to recover from the Hazel-Atlas Glass Company the sum of $960, which she claims is the amount she would have earned and received as an employee of the Hazel-Atlas Glass Company if the company had not discharged her. She claims that she was discharged by the defendant without just cause and contrary to the terms of the contract made and entered into for her benefit between the Glass Bottle Blowers Association, affiliated with the American Federation of Labor, and The Hazel-Atlas Glass Company.

It is claimed by the plaintiff and admitted by the defendant that plaintiff was discharged because she married while in the employ of the company, contrary to a rule of the company posted and promulgated on the bulletin board of the factory known as "Hazel-Atlas No. 2." The terms of this rule were that all married women were to be discharged on and after a certain date (about July 1, 1939) and that any woman employee who married was to be discharged. It is not disputed that this rule was posted on or about March 23, 1939. The pleadings showed the plaintiff was married on or about June 10, 1939, and was discharged on September 30, 1939.

July 5, 1935, the National Labor Relations Act became effective. Section 159 of this Act reads as follows:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes. shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, that any individual employee or group of employees shall have the right at any time to present grievances to their employer."

It is not disputed that the Glass Bottle Blowers Association was chosen as the sole bargaining agent of the employees of The Hazel-Atlas Glass Company. For convenience, the Glass Bottle Blowers Association will hereafter be referred to as the "Union" and The Hazel-Atlas Glass Company as the "company".

Effective September 1, 1939, the union and the company entered into an agreement. This agreement is styled, "Agreement and Working Rules," a copy of which is filed by the defendant and made a part of the pleadings. This agreement as filed is in printed form and shows that it was signed by many representatives of the company and by officers of the union and acting for the union. There is also noted a list of conferees, among which are listed members of Locals 159, 171, 175, 178 and 179, which are all Locals of Plant No. 2 of The Hazel-Atlas at Zanesville, Ohio.

Article 3, Section 2, of this agreement reads as follows:

"Nothing in the above shall be construed as preventing the management from discharging employees for incompetency or on sight for intoxication, disorderly conduct, insubordination, violation of reasonable factory rules, or for carelessness endangering safety of others."

This agreement was negotiated while the rule above referred to was posted on the bulletin boards of the factory in which the plaintiff worked. The members of the union and the officers of the union worked in the factory where this rule was posted. It must be taken for granted, then, under all the circumstances, that the officers of the union, the members of the union, including the plaintiff and in fact every one connected with The Hazel-Atlas

Plant No. 2, knew of this rule and knew its meaning and understood the purport of it.

It is a matter of public knowledge that in the negotiation of working rules between a union and the employer such items as appear in Article 3, Section 2, of this agreement between this union and the company are discussed and made the subject of negotiation where differences arise. As noted before, there were in the conference representatives from five locals. Taking into consideration all the circumstances, and especially since Art. 3, Sec. 2, gives to the employer the right to discharge an employee for **violation of reasonable factory rules** it must be taken for granted that the union accepted this rule as posted as being a reasonable rule.

The plaintiff says that when she was discharged she did object to this rule. She further says that she then appealed to the union in conformity with Article 7, Section 3. She does not contend that she exhausted her every means to redress her wrong through the channels of the union, but she does say her efforts were "in vain and to no avail"; thus showing that the union did not recognize her claims and did, in fact, recognize the right of the employer to discharge her for the reason given. That being the case, the union did accept the rule as **reasonable** with the employer having the right to discharge an employee for **violation of a reasonable rule.**

Under the Federal Act the union agreement bound all the employees. The union, as the sole bargaining agent, had a right and the power to make agreements with the company covering terms of hiring and discharging and other conditions of employment, and factory rules. The individual worker as an individual had lost his bargaining power with the company. It had, in fact, been voted away from him by virtue of the Federal statute, as an individual, when the employees selected by a majority vote a bargaining agent of their own choosing. There is no question but that the individual worker could file a complaint concerning rules or conditions distasteful to him, but the method of procedure from then on is covered by the rules of the union.

The Federal statute gives the union the right to make agreements and accept and adopt rules. Those rules which the union adopt or accept are binding on all the members of the union.

The plaintiff is claiming a right to recover by virtue of the agreement between the union and the company, claiming that under the terms of the agreement she was hired for the term of the agreement. If this were true, it would also be true that in order to take advantage of the benefits of the agreement she would have had to have abided by all the other terms of the agreement and she must have obeyed the rules as they had been accepted by the union.

But the plaintiff urges that the rule which she admits she violated was an unreasonable rule and hence she has a right to recover. It is only necessary to refer to the Federal statute and the agreement between the union and the company and all the circumstances under which it was adopted, and it becomes very evident that the union did accept the rule as reasonable. The court surely has no right to interfere and say whether a rule thus accepted is reasonable or is not reasonable. That is a matter solely for the union to decide. Should a member of the union feel that his rights have been invaded and that he is injured as an individual by such a rule, then his recourse is through the union.

The plaintiff urges that the rule is against public policy.

Chief Justice Story has often been quoted on the doctrine of "public policy" as follows:

"Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts. but it is difficult to determine its limits with any degree of ex-

actness. It has never been defined by the courts, but has been let loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy."

Judge Stone. of the Illinois Supreme Court, (188 N. E., at page 842), says:

"Public policy is a principle of law which holds that no one may lawfully do that which has a tendency to injure the public or to be against the public welfare."

Judge Day, of the Ohio Supreme Court, (121 Oh St at page 62), says quoting:

"A definition of the term 'public policy' quite generally accepted is: 'that principle of law which holds no subject can do that which has a tendency to be injurious to the public or against public good'."

He continues:

"It is a relative term, and must be interpreted in the light of circumstances surrounding a particular contract or transaction."

From the statements of these different learned judges it must be deduced that just what is against public policy is to be determined by the facts in each particular case as it arises. In this case, the real people interested are the members of the union and the company. The people of the community out side of the members of this union have no interest in such a rule as is here sought to be declared as against public policy.

It is here very apparent that those who were most interested in the rule and most affected, i. e. the members of the union, accepted the rule as a matter of policy. Since the union and the company adopt this rule as a matter of policy it is difficult to see in what way the public is hurt, or in what way such a rule is against the public good.

This being so, it is not for the court to interfere and say whether such a rule is or it not against public policy, unless it would be positively shown it violated the law, or it was clearly shown that it was against the general public welfare.

For the reasons above stated the court finds that the plaintiff has no cause of action. and therefore the demurrer of defendant will be and is sustained.